## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CR-0018-01-CVE |
| | ) | |
| DEVIN LEE MELCHER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Before the Court is Defendant Melcher's Motion to Dismiss and Motion to Quash Arrest and Suppress Evidence (Dkt. # 60).[1]  Defendant Devin Lee Melcher ("Melcher") is charged in the Third Superseding Indictment (Dkt. # 78) with conspiracy in violation of 21 U.S.C. § 846 [Count One]; knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2(a) [Count Two]; knowingly possessing a firearm after former felony conviction in violation 18 U.S.C. § 922(g)(1) [Count Three]; and obstruction of justice in violation of 18 U.S.C. § 1503 [Counts Four, Five, and Six].  He seeks to suppress the evidence obtained on January 26, 2007 and thereafter based on alleged violations of his Fourth Amendment rights.  The Court held a hearing on August 1, 2007, where Oklahoma Highway Patrol ("OHP") trooper Branson Perry ("Perry") testified.  The Court admitted into evidence a videotape of the traffic stop, which it has reviewed.  For the reasons set forth below, the Court finds that the motion should be denied.

---

[1]   The Court treats this motion as a motion to suppress evidence.

**I.**

On January 26, 2007, defendants were traveling in a 2000 Mitsubishi on the Will Rogers Turnpike (the "turnpike"). Defendant Anthony McCauley ("Anthony") drove the car, defendant Santana McCauley ("Santana") was in the front passenger seat, and Melcher was in the backseat. On the turnpike, there are toll plazas where cars with electronic signaling devices known as pike passes continue straight past the toll area and need not slow down. Vehicles without pike passes are required to exit the turnpike to enter the toll plaza. Defendants entered the toll plaza to pay the toll in cash.

At approximately 10:17 a.m.[2], Perry stopped the vehicle after the driver had paid the toll, on the ground that the driver failed to signal a lane change as he exited the turnpike to pay the toll. He approached the vehicle and observed Melcher leaning forward toward the floorboard of the car. Perry ordered Anthony to get out of the car with his driver's license. Perry learned that Anthony was driving under suspension, and placed him in the patrol car.

In the patrol car, Perry asked Anthony where they were going, and Anthony responded that they were traveling to Joplin, Missouri to go shopping. Perry noticed that Anthony was nervous and displayed signs of anxiety and stress. He made no eye contact with Perry; his hand were shaking; his voice cracked; he used a low tone of voice; and his facial muscles twitched. Perry smelled an odor of burnt marijuana on Anthony and asked him about the smell. Anthony responded that, earlier that morning, he had been around his father who had smoked marijuana. At approximately 10:19 a.m., Perry asked Anthony about the other passengers in the car. Anthony identified the front-seat passenger as his brother and referred to the back-seat passenger as "Chino." Although he told Perry

---

[2]   The times recited in this Opinion and Order are taken from the videotape of the traffic stop.

that "Chino" was a "good friend," Anthony indicated that he did not know "Chino" by any other name and could not provide more details about "Chino."

OHP Trooper Gene Hise ("Hise") then appeared on the scene at Perry's request. At approximately 10:24 a.m., both Hise and Perry approached the vehicle and asked the passengers to identify themselves. Santana gave the troopers the false name of "Dale Isaac McCauley" and indicated that he did not have a driver's license with him. He told Perry that they were traveling to Joplin to drop off Chino. The backseat passenger identified himself as Devin Melcher and provided the troopers with an Iowa driver's license.

Perry then returned to the patrol car at 10:28 a.m. and confirmed with headquarters that there was an outstanding felony arrest warrant for Anthony in Tulsa, Oklahoma for drug-related charges. At this time, he placed Anthony under arrest.[3] At approximately 10:31 a.m., Perry spoke with dispatch about "Dale McCauley." At 10:36 a.m., Perry relayed Melcher's information to dispatch.

At 10:42 a.m., Hise and Perry then asked Melcher and Santana to exit the vehicle and stand along the fence by the highway. Hise walked his drug-detection dog around the vehicle at 10:43 a.m. The dog signaled that there were drugs by the front passenger side and the trunk of the vehicle at 10:44 a.m.

Hise and Perry then conducted a search (the "first search") of the vehicle. They discovered trace quantities of marijuana in the interior of the vehicle, a glass pipe, digital scales, and a FedEx receipt. In the trunk, they found a bag containing a .22 caliber rifle and a 22/.410 rifle. They also found a shaving kit containing a small bag of methamphetamine.

---

[3]   From the videotape, the Court could not determine the exact time that Anthony was placed under arrest.

The troopers then requested Melcher to drive the vehicle to an OHP office a few miles away. According to Perry's testimony at the suppression hearing, Melcher did not object to this request. At approximately 11:00 a.m., Melcher proceeded to drive the car, with one patrol vehicle in front of him and one patrol vehicle behind him, to the OHP office.

Perry took Melcher, Anthony, and Santana into the OHP office. Hise searched the vehicle again (the "second search"). This time, he found approximately 1.5 lbs of methamphetamine in a Malt-O-Meal box under the driver's seat, money orders receipts, a one ounce bag of methamphetamine, a glass pipe, assorted pills in the back seat, and a digital scale. After this second search, Melcher and Santana were placed under arrest. At the suppression hearing, Perry estimated that the total time that defendants had been detained up to Melcher and Santana's arrests was 90 minutes. At this time, the troopers read them their Miranda rights.

The troopers conducted a third search (the "third search") of the vehicle two days after the initial stop based on listening to recorded jail phone calls made by Melcher. They discovered money order receipts, a plastic bag containing one ounce of methamphetamine, and assorted pills in the backseat of the car.

**II.**

The Court addresses in Part A whether the initial traffic stop was valid; in Part B whether the traffic statute at issue is unconstitutionally vague as applied to this case; in Part C whether the troopers lawfully searched the trunk of the vehicle; in Part D whether the stop was unlawful in its duration; and in Part E whether the second search was valid.

**A.**

A traffic stop is a seizure under the Fourth Amendment. United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc). "The validity of a traffic stop under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." United States v. Tibbetts, 396 F.3d 1132, 1137 (10th Cir. 2005) (quoting United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004)); see also United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998); Botero-Ospina, 71 F.3d at 786. The standard is an objective one; the subjective motivations of the officer are irrelevant. Whren v. United States, 517 U.S. 806, 810-18 (1996); United States v. Manjarrez, 348 F.3d 881, 884 (10th Cir. 2003); Botero-Ospina, 71 F.3d at 787.

The Tenth Circuit has held that officers can stop a vehicle for failure to signal when exiting the interstate and entering a toll booth area. In Manjarrez, the defendant was traveling along a toll road in Oklahoma and was stopped because he "failed to signal when [the vehicle] exited the interstate into the toll plaza and failed to signal again when it changed lanes and proceeded towards the toll booth." 348 F.3d at 884. According to the Tenth Circuit:

> The district court . . . concluded that "[b]ased on the video evidence, leaving the turnpike to go on to the toll plaza is leaving a lane as contemplated by Oklahoma statutes and therefore, precipitates an obligation to signal." We agree, and note that a signal is required when exiting the interstate.

Id. at 885. In United States v. Richardson, 2007 WL 172192 (10th Cir. Jan. 24, 2007)[4], the defendant was stopped "based on the driver failing to signal when branching off from the turnpike into the toll plaza." Id. at *1. Although the Richardson court found Manjarrez somewhat troubling in its breadth, it ultimately found that Manjarrez was controlling and thus the initial traffic stop was valid.

Melcher unsuccessfully attempts to distinguish this case from Richardson and Manjarrez. According to Melcher, "Richardson appears to be distinguishable from the present case in at least one critical point however. In Richardson, the basis for the stop was a failure to signal upon exiting the freeway, while the basis for the stop in the present matter is a failure to signal a lane change." Dkt. # 60, at 7. However, the Richardson court stated, "we read [Manjarrez] as holding that a signal was required both because the driver had changed lanes and because the driver had exited the roadway." Richardson, 2007 WL 172192 at * 3 (emphasis added). Ultimately, it is quite clear that Manjarrez controls and that, regardless of whether defendant was stopped for failing to signal a lane change or failing to signal as he exited the interstate, the initial stop was valid.

**B.**

OKLA. STAT. tit. 47, §11-309(2) reads:

A vehicle shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his intention to change lanes.

Melcher argues that this statute, upon which the troopers relied in stopping the vehicle, is unconstitutionally void for vagueness.

---

[4] The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue and assists the Court in its disposition of this issue.

Melcher raises this issue primarily because the Richardson court expressed some concern about how to characterize the conduct of exiting the interstate to pay a toll: "The maneuver at issue is not easily determined to be either a lane change or an exit from the turnpike; paradoxically, though, it is problematic to view it as *not* either of those options." 2007 WL 172192, at * 2. Further, in the concurrence, Judge Lucero and Judge Henry stated:

> [O]ur holding in Manjarrez leads to what appears to be a bizarre result-technically, Richardson may have "exited" the Will Rogers Turnpike to pay the required toll, but at no point did he change lanes in the process. Under these circumstances, a signal on his part in either direction would have misled other travelers on the turnpike into believing that he was going to change lanes, when in fact he did not intend to do so. On the other hand, he did technically exit the freeway so as to be ensnared by the express language of Manjarrez, which is why I refer to the result as bizarre. The Oklahoma Legislature may want to address this odd situation.

Id. at *4 (Lucero, J, and Henry, J., concurring). According to Melcher, because "legal professionals who have carefully studied the issue still have doubts and disagreement about whether the conduct in question constitutes a violation of the law," "*by definition* the ordinary citizen cannot be expected to be on notice that his conduct could result in a stop." Dkt. # 10 (emphasis in original).

The Constitution prohibits statutes of "standardless sweep" that fail to establish "minimal guidelines to govern law enforcement." Kolender v. Lawson, 461 U.S. 352, 358 (1983). Penal statutes should "define the criminal offense with sufficient definiteness" in order both to apprise citizens of what conduct is prohibited and to prevent police from effecting a form of state-sanctioned discrimination. Id. at 357. "When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." United States v. Saffo, 227 F.3d 1260, 1270 (10th Cir. 2000). The Court "must take into account the limitations in the English language with respect to being both specific and manageably brief and

not deem void for vagueness those laws which are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." United States v. Michel, 446 F.3d 1122, 1136 (10th Cir. 2006) (quoting United States v. Solomon, 95 F.3d 33, 35 (10th Cir. 1996) (internal citations and quotations omitted)). The fact that different courts may draw "subtle distinctions" in interpreting a law "does not necessarily render the statute vague for constitutional purposes." Id.

In United States v. Borrego, 2003 WL 21153252 (10th Cir. 2003)[5], the defendant argued that OKLA. STAT. tit. 47, §11-309(2) was void for vagueness. The Tenth Circuit quickly disposed of the claim, noting that the defendant did not cite any cases in support for his assertions and did not challenge the district court's conclusion that the statute's language was sufficiently clear. Id. at * 3. Here, the fact situation is different than in Borrego in that the "lane change" at issue involves the "exit" from an interstate to a toll plaza. Nonetheless, as in Borrego, the Court finds the language of OKLA. STAT. tit. 47, §11-309(2) is sufficiently definite to let a person of ordinary intelligence know that he violated the statute. The Tenth Circuit's discussion in Richardson that the driving maneuver is difficult to categorize does not suggest that the statute is unconstitutionally vague.

Further, even if the statute were unconstitutionally vague, the fruits of the search ought not be excluded. If the Oklahoma statute were unconstitutionally vague as applied in this case, it follows that the traffic stop and search of the car would have occurred in violation of Melcher's Fourth Amendment right against unreasonable searches and seizures. The traditional remedy for such violations is the exclusion of evidence obtained as a result of the unlawful search. Illinois v.

---

[5]  The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue and assists the Court in its disposition of this issue.

Krull, 480 U.S. 340, 347 (1987). However, "this remedy is not exceptionless." United States v. Cardenas-Alatorre, 485 F.3d 1111, 1114 (10th Cir. 2007). The exclusionary rule ought not be employed when officers acted in good faith reliance on a statute, even if the statute ultimately may be found unconstitutional. See Krull, 480 U.S. at 355; Michigan v. DeFillippo, 443 U.S. 31 (1979); Cardenas-Alatorre, 485 F.3d at 1114. This exception to the exclusionary rule is applicable here. The Court is unable to conclude that the troopers acted in an objectively unreasonable manner in relying on OKLA. STAT. tit. 47, §11-309(2). See Cardenas-Alatorre, 485 F.3d at 1115-17 (holding that, even if the New Mexico traffic law was unconstitutionally vague as applied to defendant, the court was unable to conclude that the officer acted in an objectively unreasonable manner in relying on the traffic statute to effectuate a traffic stop; thus, the exclusionary rule did not apply). Thus, the evidence should not be excluded.

## C.

Melcher next contends that, even if the troopers had the right to search the interior of the car, they did not have probable cause to search the trunk. However, the warrantless search, including the search of the trunk, was justified under the automobile exception to the warrant requirement. "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." United States v. Stewart, 473 F.3d 1265, 1270 (10th Cir. 2007) (quoting California v. Acevedo, 500 U.S. 565, 580 (1991)). Once the drug-detection dog sniffed the exterior of the car[6] and signaled that there were drugs in the car, the

---

[6] "A canine sniff itself does not implicate Fourth Amendment rights because of the limited information it provides and its minimal intrusiveness." United States v. Hunnicutt, 135 F.3d 1345, 1350 (10th Cir.1998) (citing United States v. Place, 462 U.S. 696, 707 (1983)); United States v. Ludwig, 10 F.3d 1523, 1527 (10th Cir.1993).

troopers had probable cause to search the entire car – including the trunk. United States v. Rosborough, 366 F.3d 1145, 1153 (10th Cir. 2004) ("a dog alert creates general probable cause to search a vehicle; it does not implicate the precision of a surgeon working with scalpel in hand").[7]

In his motion to suppress, Melcher states that the dog did not alert until Hise made a hand gesture. He implies that the dog did not alert to the presence of drugs but merely responded to Hise's hand gesture. The Court reviewed the videotape several times and finds that Hise did not make any hand gesture, let alone an improper hand gesture. Thus, the dog alert gave the troopers probable cause to search the entire vehicle.

**D.**

Melcher claims the stop was unlawful in its duration. In determining whether a seizure comports with the Fourth Amendment, the Tenth Circuit has identified three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment . . . (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity . . . and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." United States v. Davis, 94 F.3d 1465, 1467-68 (10th Cir.1996) (citations omitted). These categories are not static; a consensual encounter can escalate into an investigative detention, and an investigative detention can escalate into an arrest. United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). The Court must analyze each step of the encounter and determine whether the

---

[7] In Rosborough, the Tenth Circuit found that when a drug-detection dog signaled that there were drugs in the interior of the car, the officers had probable cause to search the interior of the vehicle as well as the trunk. Here, the drug-detection dog specifically signaled that there were drugs in the trunk. Thus, this case is far easier than Rosborough.

10

requisite level of suspicion is present. Id. The reasonableness of the length of the detention depends, in part, on whether the encounter is a mere traffic stop, an investigative detention, or a full arrest.

Here, the nature of the detention changed after the initial stop. As noted above, Perry and Hise lawfully stopped defendants based on a traffic violation. To the extent that the initial traffic stop was prolonged beyond the time necessary to effectuate the traffic stop, the lengthier detention was justified by the troopers' reasonable suspicion of criminal activity. It is well established that a detention that extends beyond the scope of the traffic stop is reasonable if prolongation of the stop was supported by reasonable suspicion. See United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005); United States v. Villa-Chaparro, 115 F.3d 797 (10th Cir. 1997) . Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Alcaraz-Arellano, 441 F.3d 1252, 1260 (10th Cir. 2006) (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002). Here, the following particularized factors contributed to Perry's reasonable suspicion that criminal activity was afoot: Perry observed Melcher leaning forward when the vehicle was stopped; Anthony was driving

without a license; Anthony was highly nervous; Perry smelled burnt marijuana on Anthony; Anthony and Santana knew little information about Melcher and identified him as "Chino"; there was an outstanding warrant for Anthony's arrest for drug-related charges; and Anthony and Santana provided different explanations of their travel plans. These factors, viewed in totality, indicate that Perry had reasonable suspicion of criminal activity to warrant a lengthier detention until the dog alerted.

Once the dog alerted, the troopers had probable cause to conduct a search. Upon finding the drugs and firearms in the vehicle, the troopers could have placed Melcher under arrest. It follows that the lengthy detention following the dog alert was lawful.

**E.**

Finally, Melcher argues that the second search[8] of the vehicle at the OHP office was unconstitutional. However, the troopers were entitled to continue searching the vehicle so long as the search was supported by probable cause. See Ornelas v. United States, 517 U.S. 690, 693 (1996) (noting a law enforcement officer may conduct a warrantless search of a vehicle if the officer's search is supported by probable cause). Here, the troopers had probable cause because they already found controlled substances and firearms in the vehicle. Further, even if the search were improper, the evidence in the vehicle would have been discovered during a later inventory search and therefore should not be suppressed. See Nix v. Williams, 467 U.S. 431, 444-48 (1984).

**III.**

---

[8] There was some debate at the suppression hearing whether the search at the OHP office was a second search or a continuation of the roadside search. It is irrelevant whether this search was a continuation of the first search or a new search. The Court refers to the search at the OHP office as the "second search."

In summary, the Court finds that the initial stop was valid based on an observed violation of the Oklahoma traffic laws. Further, the Court finds that OKLA. STAT. tit. 47, §11-309(2) is not unconstitutionally vague as applied to Melcher; even if the statute were unconstitutionally vague, the Court would not exclude the evidence due to Perry's good faith reliance on the statute. The Court also finds that, based on the dog alert, the troopers had probable cause to search the vehicle, including the trunk. Additionally, the Court finds that the length of the detention was lawful. To the extent that Melcher objects to the length of the detention prior to the drug alert, the Court finds that Perry had reasonable suspicion of criminal activity to prolong the stop. Once the dog alerted and the troopers found firearms and controlled substances in the vehicle, they had probable cause to arrest the defendants and the ensuing lengthy detention was valid. Finally, the Court finds that the second search of the vehicle was lawful pursuant to the automobile exception to the warrant requirement. Therefore, the Court finds that Melcher's motion to suppress should be denied.

**IT IS THEREFORE ORDERED** that Defendant Melcher's Motion to Dismiss and Motion to Quash Arrest and Suppress Evidence (Dkt. # 60) is hereby **denied**.

**DATED** this 3rd day of August, 2007.

*Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT